## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

WHITEHOUSE & SCHAPIRO, L.L.C.,  )
7200 STANDARD DRIVE  )
HANOVER, MD 21076,  )
                           )
      *PLAINTIFF*,  )
                           )
V.  )     NO. _____
                           )
OHIO MILLS CORP.,  )
1719 E. 39TH ST.  )     Judge:
CLEVELAND, OH 44114  )
                           )
    SERVE ON ITS STATUTORY AGENT:  )     **COMPLAINT**
                           )
    RONALD KATZ  )
    1719 E. 39TH ST.  )
    CLEVELAND, OH 44114  )
                           )
AND  )
                           )
RONALD KATZ,  )
24960 FAIRMOUNT BLVD.  )
BEACHWOOD, OH 44122,  )
                           )
      *DEFENDANTS*.  )
                           )

### COMPLAINT

    Plaintiff Whitehouse & Schapiro, L.L.C. ("**W&S**"), by its undersigned attorneys, files this Complaint against defendants Ohio Mills Corp. ("**Ohio Mills**") and Ronald Katz ("**Katz**" and, together with Ohio Mills, the "**Defendants**") and, for its causes of action, states as follows:

### Preliminary Statement

    1.    This Complaint has been filed to seek redress for Defendants' deceitful business practices and failure to honor the material terms of Ohio Mills' agreements with W&S, including

the failure to pay the debts Ohio Mills owes to W&S.  The causes of action include breach of contract against Ohio Mills and fraud against Ohio Mills and Ronald Katz.

2.      W&S and Ohio Mills entered into a series of agreements beginning in 2010 based on a shared understanding:  in consideration for W&S's exclusive right to purchase all used clothing and other goods collected and sold by Ohio Mills, in addition to paying Ohio Mills for the goods purchased, W&S also would provide Ohio Mills with significant financial accommodations in the form of favorable payment terms, equipment leases, and loans, pursuant to the agreements between them from time to time.

3.      Ohio Mills has failed to honor the exclusivity agreement by selling its goods to customers other than W&S.  In addition, Ohio Mills has failed to make the loan and lease payments due to W&S even after given multiple extensions of time to meet its obligations.  Even worse, following the death of W&S's principal, Ohio Mills and Katz fraudulently induced W&S to make substantial prepayments for goods they promised would be shipped to W&S without ever shipping, or intending to ship, the goods, which resulted in a significant increase in Ohio Mills' obligations to W&S.

4.      For these reasons, as explained in detail below, W&S files this Complaint seeking specific performance of the exclusivity provision of its agreement with Ohio Mills, direct money damages for amounts owed by Ohio Mills on certain outstanding loans and other obligations, and consequential money damages for lost profits due to Ohio Mills' failure to honor its exclusive supply agreement with W&S.  W&S also seeks judgment against Katz personally for the fraud he committed in inducing W&S to prepay for goods Katz never shipped or intended to ship.

**The Parties**

5.      W&S is a limited liability company organized under the laws of the State of Maryland, with its principal place of business at 7200 Standard Drive, Hanover, Maryland 21076. W&S has two members:

        a.      WKS Corporation is a corporation organized under the laws of the State of Maryland, with its principal place of business at 7200 Standard Drive, Hanover, Maryland 21076.

        b.      WKS Miami LLC is a limited liability company organized under the laws of the State of Maryland, with its principal place of business at 7200 Standard Drive, Hanover, Maryland 21076.  Its sole member is Brian London, a resident of the State of Maryland.

6.      Defendant Ohio Mills is a corporation organized under the laws of the State of Ohio, with its principal place of business at 1719 E. 39th St. Cleveland, Ohio, 44114.

7.      Defendant Katz is an individual citizen of the State of Ohio residing in Cuyahoga County, Ohio.

**Jurisdiction and Venue**

8.      The Court has subject-matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1332(a)(1), as complete diversity of citizenship exists between W&S and the Defendants and the amount in controversy exceeds $75,000.00.

9.      This Court has personal jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) and R.C. 2307.382(A)(1) – (4), (6), and (8), and R.C. 2307.382(C).

10.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(1) and Local Rule 3.8 of the United States District Court for the Northern District of Ohio.

## Factual Background

11.     W&S is a family-owned business located outside of Baltimore, Maryland.  Among other things, W&S conducts a world-wide textile business, including wholesale operations.  As part of its wholesale operations, W&S has held the exclusive right since 2013 to purchase from Defendant Ohio Mills used clothing, which W&S resells to its customers all over the world.  During the time period when W&S began its business relationship with Ohio Mills in 2010 through August 2019, W&S was led by its principal, William K. Schapiro, who passed away in August 2019.  Following Mr. Schapiro's death, his nephew, Brian London, took over as the President of W&S.

12.     Ohio Mills is in the textile recycling business, including the reclamation of discarded or donated textiles for re-use and resale.  As part of its reclamation business, Ohio Mills collects used clothing from bins that serve as collection points for certain non-profit organizations to receive donations of such goods (the "**Credential Clothing**"), and also operates other bins not associated with a charity which also collect Credential Clothing.  Ohio Mills sells the Credential Clothing to W&S pursuant to their exclusive supply agreement, which W&S then resells wholesale in the United States and abroad.

### The Amended Main Supply Agreement

13.     On August 31, 2013, W&S and Ohio Mills (together, the "**Parties**") entered into a Purchase, Supply, and Lease Agreement (the "**Main Supply Agreement**"), which governed the purchase and sale of the Credential Clothing and other aspects of the commercial relationship between the Parties.  The Parties further entered into a series of amendments to the Main Supply Agreement, culminating in the Fifth Amendment to Purchase, Supply, and Lease Agreement, dated as of December 9, 2015 (the "**Fifth Amendment**" and, together with the Main Supply Agreement and earlier amendments, as applicable, the "**Amended Main Supply Agreement**").  A copy of

4

the Main Supply Agreement is attached hereto as **Exhibit A**, and copy of the Fifth Amendment is attached hereto as **Exhibit B**.

14.     Pursuant to the Fifth Amendment, the Amended Main Supply Agreement remains in effect through June 30, 2026 and therefore governs the Parties' ongoing business relationship and all factual allegations contained herein.  See Exhibit B, at § 4(a).

15.     Several key provisions of the Amended Main Supply Agreement, which remain in full force in effect, are discussed below.

*Exclusivity*

16.     The Amended Main Supply Agreement provides that Ohio Mills "agrees to sell to W&S all of [Ohio Mills'] entire production of Credential Clothing" in accordance with its terms (the "**Exclusivity Provision**").  Exhibit A, at § 2(a).

17.     The Amended Main Supply agreement further provides that, in the event that Ohio Mills should breach the Exclusivity Provision, W&S is entitled to seek (in addition to all available legal remedies) equitable relief in the form of "specific performance, temporary restraining order, preliminary and permanent injunction, and any other equitable remedy which may then be available from a court of competent jurisdiction, restraining [Ohio Mills] from committing or continuing to breach its obligations under [the Exclusivity Provision]."  Id. at § 2(b).

*Prepayment*

18.     The Amended Main Supply Agreement provides that W&S agrees to "pay for each shipment of Credential Clothing in advance of delivery by [Ohio Mills], on a weekly basis, based on [Ohio Mills'] good faith and reasonable estimate of the amount due for shipments to be made the following week" (the "**Prepayment Provision**").  Id. at § 3.

19.     The Prepayment Provision further provides for a "true up" process, by which W&S is entitled to adjust future payments to Ohio Mills based on any discrepancy between the

prepayment total and the value of the Credential Clothing delivered each week.  Stated differently, if W&S prepaid $1,000 in anticipation of a delivery, but received only $700 worth of Credential Clothing, W&S would be entitled to withhold $300 from the next week's estimated prepayment to Ohio Mills in order to reconcile the discrepancy. From time to time, the Parties agreed on different payment arrangements based on market conditions.

*Leasing*

20.     Section 4 of the Amended Main Supply Agreement provides that W&S may lease to Ohio Mills, at the sole discretion of W&S, certain bins for use by Ohio Mills and its affiliated charitable organizations in the collection of Credential Clothing, pursuant to a separate Master Bins Lease Agreement dated as of August 31, 2013.  A copy of the Master Bins Lease Agreement is attached hereto as **Exhibit C**.

21.     Pursuant to the Master Bins Lease Agreement, W&S leased to Ohio Mills a total of 400 bins, which were in addition to 100 bins previously leased to Ohio Mills (collectively, the bins still leased by Ohio Mills are referred to as the "**Bins**").

22.     Ohio Mills has repeatedly defaulted in making the payments due under the Master Bins Lease Agreement, and despite W&S on multiple occasions forbearing from exercising its rights to terminate Ohio Mills' rights under the Agreement, Ohio Mills failed to cure its payment defaults within the time required for such cure under the Master Bins Lease Agreement.

23.     As of the filing of this Complaint, the total unpaid amounts due for the leased Bins is $100,962.90.

Loans

24.     From the outset of their business relationship, W&S has made multiple loans to Ohio Mills to help enable Ohio Mills to sustain its business operations.  These loans included an advance in the amount of $155,000.00, the unpaid balance of which is $81,526.72; a "SOPA loan",

the balance of which is $7,275.17; and a "line of credit loan", the unpaid balance of which is $22,419.00; and a "Special Olympics loan", the unpaid balance of which is $69,032.14 so that the unpaid balance of all of the prior loans made totals $180,253.03.

25.     On multiple occasions, Ohio Mills failed to make the payments due to W&S under the Parties' loan agreements, and Ohio Mills asked W&S to accommodate Ohio Mills' requests to defer payments, which W&S repeatedly did.  Also from time to time, the parties confirmed in writing the amounts owed by Ohio Mills to W&S, including as recently as December 9, 2021, when Ohio Mills' Controller confirmed that Ohio Mills owed W&S a total of $281,216.87 for amounts due under the Bins leases and unpaid loans.

### Monies Owed Due to Prepayments for Goods Not Shipped

25.     In accordance with the terms of the Amended Main Supply Agreement, Ohio Mills, acting through Katz, would notify W&S that it had goods to be shipped to W&S, for which W&S would send prepayments based on the estimated volume of goods to be shipped.  Beginning in 2021, Ohio Mills and Katz initiated a series of communications in which Ohio Mills, acting through Katz, represented to W&S that they were ready to ship goods to W&S for which payments were requested.  W&S reasonably relied on these representations by Ohio Mills and Katz and sent a number of prepayments for the goods to be shipped.

26.     On many occasions, Ohio Mills and Katz never shipped the goods for which W&S made prepayments (the "**Prepayments for Goods Never Shipped**").  Upon information and belief, W&S now believes and therefore avers that the representations by Ohio Mills and Katz concerning the Prepayments for Goods Never Shipped were intentionally false and made for the purpose of inducing W&S to send prepayments to Ohio Mills at times when Ohio Mills and Katz had no intention of shipping the goods for which prepayments were made.

<u>COUNT I</u>

**(Breach of Contract as to Ohio Mills - Specific Performance)**

27.      W&S repeats, realleges, and restates all allegations contained in each of paragraphs 1 - 26 above, as though fully set forth here.

28.      The Amended Main Supply Agreement constitutes a valid, enforceable contract, duly executed by W&S and Ohio Mills, and includes the Exclusivity Provision requiring Ohio Mills to sell to W&S all of its entire production of Credential Clothing, subject only to W&S's right to decline the purchase of goods from time to time.  <u>Exhibit A</u>, at § 2(a).

29.      The Exclusivity Provision further provides that W&S is entitled to seek equitable relief in the form of specific performance restraining Ohio Mills from committing or continuing to breach its obligations under the Amended Main Supply Agreement.

30.      As detailed above, Ohio Mills has failed on multiple occasions to deliver shipments of Credential Clothing to W&S due to its sale of Credential Clothing to other customers, which constitutes a breach of Ohio Mills' obligations under the Amended Main Supply Agreement.

31.      W&S has demanded that Ohio Mills fulfill its obligations under the Amended Main Supply Agreement, including the Exclusivity Provision, but Ohio Mills has refused to comply.

32.      At all times relevant hereto, W&S was ready, willing, and able to perform under the terms of the Amended Main Supply Agreement.

33.      Indeed, on several occasions, W&S provided payment to Ohio Mills for shipments of Credential Clothing, which Ohio Mills accepted without ever delivering such Credential Clothing to W&S.

34.      Ohio Mills expressly agreed in the Amended Main Supply Agreement, ¶2(b), that if it breached the Exclusivity Provision, W&S would be entitled to specific performance and a

preliminary injunction restraining Ohio Mills from continuing to breach its obligations to sell goods exclusively to W&S.

35.     W&S requires the shipments of Credential Clothing for its wholesale business and has no adequate remedy at law.

36.     As a direct and proximate result of Ohio Mills' breach of the Amended Main Supply Agreement, W&S has sustained and will continue to sustain damages.

## COUNT II

### (Breach of Contract as to Ohio Mills - Lost Profits and an Accounting)

37.     W&S repeats, realleges, and restates all allegations contained in each of paragraphs 1 - 36 above, as though fully set forth here.

38.     The Amended Main Supply Agreement constitutes a valid, enforceable contract, duly executed by W&S and Ohio Mills, and includes the Exclusivity Provision requiring Ohio Mills to sell to W&S all of its entire production of Credential Clothing.  Exhibit A, at § 2(a).

39.     As detailed above, Ohio Mills has failed on multiple occasions to deliver shipments of Credential Clothing to W&S due to its sale of Credential Clothing to other customers, which constitutes a breach of Ohio Mills' obligations under the Amended Main Supply Agreement.

40.     W&S has demanded that Ohio Mills fulfill its obligations under the Amended Main Supply Agreement, including the Exclusivity Provision, but Ohio Mills has refused to comply or to compensate W&S for its injuries.

41.     At all times relevant hereto, W&S was ready, willing, and able to perform under the terms of the Amended Main Supply Agreement.

42.     Indeed, on several occasions, W&S provided payment to Ohio Mills for shipments of Credential Clothing, which Ohio Mills accepted without ever delivering such Credential Clothing to W&S.

43.     As a direct and proximate result of Ohio Mills' breach of the Amended Main Supply Agreement, W&S has sustained and will continue to sustain consequential damages that, upon information and believe, total no less than $400,000 in the form of lost profits from Credential Clothing it did not receive and was therefore unable to resell as part of its wholesale business.

## COUNT III

### (Breach of Contract as to Ohio Mills—Amounts Owed)

44.     W&S repeats, realleges, and restates all allegations contained in each of paragraphs 1 - 43 above, as though fully set forth here.

45.     The agreements between Ohio Mills and W&S under which W&S extended loans to Ohio Mills, and leased Bins and other equipment to Ohio Mills, constitute valid, enforceable contracts.  See Exhibits A, B, and C.

46.     As of the date of the filing of this Complaint, Ohio Mills owes W&S no less than $274,716.87 in connection with its obligations for unpaid amounts past due on account of the Parties' loan and lease agreements but has failed and refused to tender payment on the amounts due and owing, which in breach of the Parties' loan and lease agreements.

47.     In addition, over the course of time, Ohio Mills charged W&S for shipments at amounts higher than the agreed price for the goods actually delivered to W&S, resulting in W&S being owed for overpayments in the amount of $45,536.80.

48.     As a direct and proximate result of Ohio Mills' payment defaults, W&S has sustained and will continue to sustain damages of no less than $320,253.67.

## COUNT IV

### (Fraud as to Ohio Mills and Ronald Katz)

49.     W&S repeats, realleges, and restates all allegations contained in each of paragraphs 1 - 48 above, as though fully set forth here.

50.     Katz, in his individual capacity and as the President of Ohio Mills, repeatedly represented to W&S that Ohio Mills would fulfill weekly shipments of the Credential Clothing, despite that Katz knew that no such shipments would occur, which constitute false representations of material fact to W&S.

51.     Katz knew his statements were false when he made them, but he desired to induce W&S to proceed with remitting the prepayment amounts in consideration of shipments of Credential Clothing that would never be made to W&S.  Upon information and belief,  Katz sought to increase Ohio Mills' profitability and cash flow by inducing W&S to make the Prepayments for Goods Never shipped while Ohio Mills and Katz arranged to sell the goods offered to W&S to another customer.

52.     Katz took advantage of the fact that W&S relied upon shipments of the Credential Clothing to meet the demand for such goods from W&S's customers.

53.     Katz's misrepresentations were made for the purpose of defrauding W&S by having W&S rely and act upon those misrepresentations.

54.     W&S's acts of prepaying for weekly shipments were accomplished in reliance upon Katz's false material representations and W&S was justified in its reliance on those statements because of the longstanding relationship between W&S and Ohio Mills and the need for W&S to obtain shipment of Credential Clothing from Ohio Mills in order to meet the demands of W&S's customers for such goods.

55.     As a direct and proximate result of the false material representations of Katz, W&S has suffered damages in an amount no less than $141,730.45.

<u>C</u>OUNT V

**(Termination of Ohio Mills Use and Possession of Leased Bins)**

56.     W&S repeats, realleges, and restates all allegations contained in each of paragraphs 1 - 55 above, as though fully set forth here.

57.     Ohio Mills has failed to pay amounts due under the Master Bins Lease Agreement within 30 days of the date when such payments were due.  W&S exercised its rights under the Master Bins Lease Agreement, as a result of which, Ohio Mills' right to retain possession of use of the leased Bins has ceased, and W&S is entitled to repossess the leased Bins from wherever they are located.

## PRAYER FOR RELIEF

WHEREFORE, W&S requests relief as follows:

As to Count One, W&S requests that the Court enter judgment against Ohio Mills specifically enforcing the Exclusivity Provision of the Amended Main Supply Agreement and enjoining Ohio Mills from selling or continuing to sell Credential Clothing to customers other than W&S.

As to Count Two, W&S requests that the Court enter judgment against Ohio Mills for damages incurred by W&S in an amount not less than $ 400,000, together with pre- and post-judgment interest, attorneys' fees, costs and expenses, directing Ohio Mills to provide an accounting of the revenues and profits it derived from breach of its exclusivity agreement with W&S, and granting such other and further relief as the Court may deem appropriate.

As to Count Three, W&S requests that the Court enter judgment against Ohio Mills for damages incurred by W&S in an amount not less than $320,253.67, together with pre- and post-judgment interest, attorneys' fees, costs and expenses, and granting such other and further relief as the Court may deem appropriate.

12

As to Count Four, W&S requests that the Court enter judgment against Ohio Mills for damages incurred by W&S in an amount not less than $141,730.45 in actual damages, punitive damages as the Court may determine to be just and proper, together with attorneys' fees, costs and expenses, and granting such other and further relief as the Court may deem appropriate.

As to Count Five, W&S requests that the Court enter judgment against Ohio Mills and direct Ohio Mills to surrender possession of all of the leased Bins to W&S, to provide W&S the location of all such leased Bins, and grant W&S such other and further relief as the nature of this cause may require.

Date:   May 20, 2022

Respectfully submitted,

/s/ Gregory R. Farkas
Mark L. Rodio (0065134)
Gregory Farkas (0069109)
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, OH 44114
Phone: (216) 515-1640
Fax:    (216) 515-1650
Email: mrodio@frantzward.com
        gfarkas@frantzward.com

Irving E. Walker (MD Fed. Bar No. 00179)
(*pro hac vice* forthcoming)
HC Jones (MD Fed. Bar No. 20064)
(*pro hac vice* forthcoming)
**COLE SCHOTZ P.C.**
300 East Lombard Street, Suite 1450
Baltimore, MD 21202
Phone:  410-230-0660
Fax:  410-230-0667
Email:  IWalker@coleschotz.com
        HJones@coleschotz.com

*Attorneys for Plaintiff Whitehouse &
Schapiro, L.L.C.*

13